FILED'06 SEP 29 17:38USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| WILLIAM R. PEIRCE,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER of Social Security,<br><br>    Defendant. | CV 05-3025-PK<br><br>OPINION AND ORDER |

PAPAK, Magistrate Judge:

## INTRODUCTION

William Peirce applied for disability insurance benefits on December 27, 1995, under Title XVI of the Social Security Act. After an unfavorable decision, Mr. Peirce exhausted his administrative remedies and appealed to the United States District Court for the District of Oregon. His case was remanded to the Commissioner for further proceedings on March 20, 2001, considering that Peirce's spine surgery in January 1999 warranted a fresh look at his case. In the meantime, Peirce had protectively filed for disability again on May 2, 2000. The claims were consolidated and

1 - OPINION AND ORDER

a second hearing held before an Administrative Law Judge ("ALJ") on October 28, 2003. Having received a partially favorable decision, Peirce now appeals that part of the decision that was adverse; he contends that the ALJ erred in revising his disability onset date to October 31, 2002 and requests this court to grant remand for benefits dating from his original alleged onset of disability, July 31, 1995. For the reasons discussed below, the decision of the ALJ is AFFIRMED.

## BACKGROUND

Mr. Peirce was born on October 31, 1952. He completed high school. Tr. 606.[1] His employment experience includes work as a yard man at an auto wrecking yard, a welder, and a gas station attendant. Tr. 601. At his last job he performed some mechanic work. Tr. 874. He was fired from his job at the gas station on July 31, 1995 because his physical and mental conditions caused absences, a slow pace of work, and frequent arguments and disagreements with his supervisor and co-workers. Tr. 601.

Peirce has a variety of physical and mental ailments, including spinal stenosis, degenerative disc disease, a ruptured disc in his cervical spine, and depression. Tr. 600. He alleges that these combined conditions have made it impossible for him to work since July 31, 1995.

## DISABILITY ANALYSIS

### I. The Sequential Evaluation Process

The Commissioner has outlined a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 US 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive. Steps one and two - determining

---

[1] References to the Administrative Record of this case are designated "Tr." followed by the page number.

2 - OPINION AND ORDER

whether the claimant is engaged in substantial work activity, and assessing the severity of the claimant's health conditions - are not in dispute in the present case.

In step three, there is a conclusive presumption that the claimant is disabled if the Commissioner determines that the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). The criteria for these listed impairments, also called Listings, are enumerated in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments). This step is in dispute.

If the adjudication proceeds beyond the listings evaluation, the Commissioner must assess the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. §§ 416.945(a); Social Security Ruling (SSR) 96-8p. This issue is in dispute.

In step four, the claimant is not disabled if the Commissioner determines that the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 416.920(e).

If the adjudication reaches step five, the Commissioner must determine whether the claimant can perform other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 416.920(e), (f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. § 416.966.

///

## II.  The ALJ's Decision

The ALJ found that Peirce had degenerative disc disease at the cervical and lumbar spine, status post surgery, a history of headaches, chronic pain syndrome, depression/dystymia, personality disorder, a history of polysubstance abuse in remission, and question of borderline intellectual functioning. Tr. 527. These impairments were severe, but in the opinion of the ALJ did not medically meet or equal the Listings, "even accounting the revised musculoskeletal and mental sections." Id. The ALJ then constructed the following RFC:

> [F]rom July 31, 1995 until June 4, 2001, he is limited from lifting and carrying more than 10 pounds frequently with an occasional 20 pound maximum. He requires an opportunity to change position and he is limited from prolonged walking, standing, and sitting. He is limited to occasional stair climbing, stooping, kneeling, crouching, and crawling. He is unable to climb ladders. He needs to avoid extremes of heat, cold, wet, and humidity. He needs to avoid hazards such as working around dangerous machinery or working at heights. He has moderate limitations following detailed instructions, maintaining attention and concentrations for extended periods, interacting appropriately with the public, and working with coworkers without distracting them. He also has occasional disruptions of pace caused by pain and mood, though his work day would not be completely disrupted. Since June 5, 2001, he has been additionally limited from lifting and carrying more than 10 pounds. He has also been additionally limited from walking on uneven ground or being on his feet more than one hour at a time.

*Id.* The ALJ found that, prior to October 31, 2002, Peirce could not perform his former work, but could still perform a variety of jobs in the national economy. *Id.* For a variety of reasons, he found that Peirce's testimony about his limitations was not credible. *Id.* Utilizing the grids in Appendix 2 of the Pt. 404, the ALJ found that Peirce was not disabled prior to attaining 50 on October 31, 2002. Tr. 528. Pursuant to Rule 201.14, the ALJ found that Peirce was disabled as of October 31, 2002. *Id.*

///

### III. Standard of Review

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996) (citation omitted). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. . *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

### DISCUSSION

Peirce argues that the ALJ failed to properly evaluate the record at step three, both in terms of the listings requirement and in the construction of the RFC.

### I. The Listings.

Peirce contends that the ALJ erred in his determination that Peirce's impairments did not meet or exceed the Listings requirement. Specifically, Peirce contends that the ALJ erroneously rejected Dr. Dunn's opinion letter that Peirce's impairment met the listing for spinal conditions, that the ALJ failed to consider medical evidence for the three-year period starting December 27, 1995

in making this determination, and that the ALJ did not assess whether Peirce's condition or conditions, in combination or alone, "equaled" a listed impairment.

The listed impairment in question is 1.04, the relevant parts of which are:

> 1.04 Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) *accompanied by* sensory or reflex loss *and*, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> \*\*\*
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic neuroradicular pain and weakness, *and resulting in* inability to ambulate effectively, as defined in 1.00B2b.

(emphasis added). To meet a listed impairment claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. 20 C.F.R. § 416.925. To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment." 20 C.F.R. § 416.926(a).

The ALJ's evaluation at this step is more detailed than one normally sees, and is supported at every turn by evidence from the medical record. Because Peirce must establish both a listed condition and evidence of severe symptoms associated with that condition, the ALJ reviewed the record for objective indications of severity. He properly concluded that Peirce's condition did not meet the listed impairment. Tr. 519-20. Indeed, review of the record provides little objective medical evidence supporting a severity finding equal to either 1.04(A) or 1.04(C). While there was

a "weakly positive" straight-leg raising test on the left side in 1998, Tr. 495, a second test from May of 1999 yielded negative results from sitting position. Tr. 735. There is also no indication in the record of motor loss accompanied by sensory or reflex loss, nor is there dramatic limitation of the motion of the spine. As to 1.04(C), Peirce can ambulate effectively per the rules. The Listings were designed to simplify review of cases where the claimant is so obviously disabled that further analysis is not required. The ALJ, guided by substantial evidence, concluded that Peirce was not such a claimant.

Peirce contends that the ALJ improperly excluded Dr. Dunn's written communications and chart notes in his assessment. On June 12, 2001, Dr. Dunn responded to a Physician Questionnaire from DDS, which requested his opinion on Peirce's spinal impairment in terms of Listing 1.05(C), which read as follows[2]:

> C. Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
> 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
> 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

Dr. Dunn stated in his reply that "[Peirce] has spinal stenosis of both cervical and lumbar and therefore qualifies for vertebrogenic disorder..." Tr. 844. He then listed a series of chart notes in support of that contention. *Id.*

---

[2] On November 19, 2001, the Commissioner published final rules with request for comments in the Federal Register. These rules revised the listings for musculoskeletal disorders, including 1.05(C). Because this change was effective Feb. 19, 2002, the ALJ reviewed Mr. Peirce's case under the new listings 1.04(A) and 1.04(C). Nonetheless, the listings are similar, and the ALJ's rejection of an opinion on 1.05(C) remains at least partially relevant to Peirce's claim under the revised listings.

7 - OPINION AND ORDER

The Commissioner has the discretion to reject the testimony of a treating physician. Where the treating doctor's opinion is contradicted by another doctor, it may not be rejected without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995) (citation omitted). If the opinion is not contradicted, then it may only be discredited for "clear and convincing reasons." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation omitted). The record shows that a variety of doctors have had broadly divergent opinions on Peirce's spine. Because Dr. Dunn's diagnosis is contradicted, the ALJ must provide specific and legitimate reasons for rejecting that diagnosis.

The ALJ pointed out that the evidence supporting Dr. Dunn's conclusion was almost entirely subjective. In the second paragraph of the attachment, Dr. Dunn merely copied out Peirce's description of his symptoms from an office visit in 1998. Similar intake notes are reported in paragraphs three, five, and six. The only objective medical evidence which Dr. Dunn cites is an MRI image from May 1999, which shows only "mild stenosis." Dr. Dunn also provides no evidence in support of the two listed prongs - there is no indication in his reply that Peirce's range of motion or motor function are "significantly" impaired. As described above, the ALJ could not find any objective medical evidence, whether tests, imaging, or otherwise, that would support a finding of severity equal to the listing requirements. In addition, the ALJ noted that Dr. Dunn's chart notes and his correspondence with DDS are inconsistent, articulating first an opinion that Peirce could not work, and then providing a lifting limit of ten pounds. Tr. 818. Finally, it should be pointed out that evidence supporting a finding on an obsolete listing is of marginal value to the inquiry - the ALJ would still have been obligated to find and document the appropriate evidence on the severity

requirements of the revised listing. *See Owens v. Schweiker,* 692 F.2d 80, 82 (9th Cir. 1982). Dr. Dunn's questionnaire does not constitute such evidence.

Peirce also contends that the ALJ ignored the early medical record at step three, and relied instead on evidence post-dating the surgery on Peirce's cervical spine on January 7, 1999. He cites medical evidence of "frequent neck pain and migraine headaches" in particular as being ignored. Even if this were true, there is no explanation how these conditions, in combination or alone, would match the listings. However, it appears on review that the ALJ did in fact review the medical record in its entirety. He discusses a variety of office visits and MRI images that took place in the time period between the alleged onset of disability and the surgery, none of which provide evidence of a disability so severe as to match the listing requirement. Tr. 520-21. Finally, the Commissioner properly points out that this is a case of pot and kettle; Dr. Dunn's opinion letter cites nothing in the early medical record, the earliest reference being Peirce's own words from 1998. At best this error was harmless.

Peirce's final argument regarding the listings evaluation is that the ALJ did not assess whether Peirce's spinal condition "equaled" the listings. This is incorrect. The decision and the numbered findings both contain such an assessment. The decision goes into some detail regarding the listings requirements. It does not appear that any listings other than the spinal listings quoted above are in dispute, and so the discussion regarding the scope and application of *Marcia v. Sullivan* is largely irrelevant.

///

///

///

9 - OPINION AND ORDER

## II. Construction of the RFC

Peirce argues that the ALJ erred in his construction of the RFC. He objects to the ALJ's credibility assessment regarding Peirce's testimony. Peirce also contends that the rejection of Dr. Dunn's opinion letter in considering the RFC was legal error.

### A. Peirce's Credibility.

Peirce argues that the ALJ used improper legal standards to assess and discredit Peirce's testimony and other statements concerning the severity of his impairments. He presents a variety of examples, including the misapplication of medical evidence to reject Peirce's claims, the ALJ's characterization of Peirce's behavior as "drug-seeking," and the use of activities of daily living as indicative that Peirce could perform an eight-hour workday.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the ALJ must assess whether the claimant has met his obligation to: (a) "produce objective medical evidence of an impairment or impairments"; and (b) "show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) (citations omitted, emphasis in the original). The claimant is only required to produce objective medical evidence of the impairment, not of the symptom itself, the severity of the symptom or the causal relationship between the impairment and the symptom. *Id*. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused *some* degree of the symptom. *Id*. (emphasis added).

10 - OPINION AND ORDER

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. To determine whether subjective testimony is credible, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Id* at 1284 (citations omitted).

The following factors must also be considered: the circumstances under which the claimant testified, any contradictions or corroborations, the claimant's prior work record, the nature of any symptoms and medical treatment, his daily activities, and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, *3. In weighing evidence of pain, the ALJ is also required to consider the "nature, location, onset, duration, frequency, radiation, and intensity of any pain," "precipitating and aggravating factors such as movement, activity, environmental conditions," "type, dosage effectiveness, and adverse side-effects of any pain medication," "treatment, other than medication, for relief of pain," "functional restrictions" and "the claimant's daily activities." SSR 88-13, 1988 WL 236011, *3-4. "[O]nce a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (*en banc*) (citation omitted). "While subjective pain testimony cannot be rejected on the sole ground that it is not corroborated by objective medical evidence, the medical evidence is still a relevant

11 - OPINION AND ORDER

factor in determining the severity of the claimant's pain and *its disabling effects*." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), citing 20 C.F.R. § 404.1529(c)(2) (emphasis added).

If the ALJ finds the claimant's symptom testimony is not credible, the ALJ "must specifically make findings which support this conclusion" and the findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit" it. *Bunnell*, 947 F.2d at 345 (internal quotations and citations omitted). If there is no evidence of malingering, the ALJ may reject symptom evidence only if he gives clear and convincing reasons, including which testimony is not credible and what facts in the record lead to that conclusion. *Smolen*, 80 F.3d at 1281.

The ALJ's decision here is extremely clear and detailed regarding the credibility analysis. He cites a persistent pattern of medical professionals commenting on Peirce's "inconsistent, suspicious presentation," as the ALJ puts it. Tr. 524. He also points to Peirce's tendency to mislead doctors and other medical professionals. Id. On appeal, Peirce does not address this portion of the decision. To the extent that the ALJ was obligated to provide clear and convincing reasons supported by substantial evidence, his decision meets the requirements of *Smolen*. It should also be pointed out that the ALJ's assessment of Peirce's credibility did not prevent him from finding that Peirce had severe impairments related to his headaches and chronic pain syndrome. In other words, the ALJ's credibility assessment was correctly directed at the second stage of the proceeding, relying at the first stage on an examination of the objective medical evidence.

Peirce contends first that the ALJ erred in his assessment of Peirce's headache testimony, and second that the ALJ's discussion of "drug seeking behavior" is without merit or support. These two issues will be discussed together as the one flows into the other.

12 - OPINION AND ORDER

Peirce links his headaches to his cervical condition by reference to six pages' worth of brief. In the disputed section of the opinion, however, the ALJ cites a broad variety of hypotheses throughout the record regarding Peirce's headaches, and finds no conclusive evidence that the headaches are linked to Peirce's spinal problems. Tr. 521-22. He attributes them to chronic pain syndrome, and proceeds to discuss the plaintiff's use of this syndrome as a means of acquiring prescription narcotics. *Id.* Contrary to Peirce's assertion, the ALJ provides ample citations to the record regarding the inconsistencies of Peirce's claims and his persistent requests for pain medication. As counterpoint, Peirce offers the assessment of Dr. Goodwin, that Peirce is "probably under-medicated." Tr. 731. This opinion stands alone among a large number of very blunt chart comments by medical professionals that Peirce was seeking drugs. The ALJ's interpretation of the record is based on substantial evidence and - to the extent that it affects his opinion of Peirce's credibility - is a legitimate method of assessing the credibility of the claimant.

Peirce next argues that the ALJ's use of activities of daily living as dispositive evidence of Peirce's ability to work is inappropriate. If the ALJ were in fact doing this, it would be inappropriate. However, the ALJ utilized this evidence in the context of discussing the physical limitations of the RFC, and in the context of unearthing additional inconsistencies in Peirce's claims. For example, he cites Peirce's roller skating, manipulation of a trailer hitch, and social interactions with friends as contradicting the assertions regarding Peirce's physical and mental limitations. Tr. 525. He also brought up the evidence of daily activities so that he could weigh it against the suspicions of a PSPC nurse that Peirce was still engaged in automotive or mechanical work. Tr. 729. None of these uses are inappropriate. Indeed, it is the job of the ALJ to weigh all such factors when considering credibility.

13 - OPINION AND ORDER

The central rationale behind the ALJ's assessment of Peirce's credibility is uncontested on appeal. Peirce's objections, while pertinent to credibility, either misconstrue the ALJ's opinion or simply ignore the reasoning and conclusions of the ALJ. The ALJ is in the best position to assess the credibility of witnesses, both at the hearing and on the record, and in this case he did nothing to warrant reversal.

### B. Dr. Dunn's Testimony.

Peirce reiterates that the rejection of Dr. Dunn's testimony regarding his physical limitations was inappropriate. Specifically, he cites the opinion letter and Dr. Dunn's chart notes from the time of the request as being clear evidence that he was disabled prior to October 31, 2002.

Where the treating doctor's opinion is contradicted by another doctor, it may not be rejected without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830. Here, Dr. Dunn's testimony is contradicted by other physicians.

The letter in question is not substantiated by objective medical evidence. Rather, the majority of the copied chart notes on the second page of the letter come from intake conversations with Peirce himself. Having already determined that Peirce was not a credible claimant, it stands to reason that the ALJ would be inclined to discredit a letter which bases itself in the subjective assertions of the patient. The ALJ may reject unsupported, conclusory statements by treating physicians. *See Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999). The ALJ did incorporate a lifting limit of 10 pounds into the RFC, which shows that he did in fact consider Dr. Dunn's opinion in combination with the opinion of other doctors and the objective medical evidence. The reasons he gave for rejecting Dr. Dunn's opinion were legitimate, and grounded in substantial evidence.

///

## CONCLUSION

Based on the foregoing findings and conclusions, the Commissioner's final decision is affirmed.

Dated this 29th day of September, 2006.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

15 - OPINION AND ORDER